**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HARLAND CLARKE HOLDINGS CORP. and SCANTRON CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 14-00138-GMS |
| MICHAEL MILKEN and KALYANARAMAN SRINIVASAN, | ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
MICHAEL MILKEN'S MOTION FOR SUMMARY JUDGMENT</u>**

OF COUNSEL:

John B. Quinn *(pro hac vice)*
Susan R. Estrich *(pro hac vice)*
Michael T. Zeller *(pro hac vice)*
B. Dylan Proctor *(pro hac vice)*
QUINN EMANUEL URQUHART
& SULLIVAN LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California  90017
(213) 443-3000

Dated:  July 18, 2014

Kevin G. Abrams (#2375)
John M. Seaman (#3868)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
Telephone:  (302) 778-1000
Facsimile:  (302) 778-1001
abrams@abramsbayliss.com
seaman@abramsbayliss.com

*Attorneys for Defendant Michael Milken*

# TABLE OF CONTENTS

**Page**

Statement of the Nature and State of the Proceedings ....................................................................1

Summary of Argument .....................................................................................................................2

Statement of Facts............................................................................................................................3

Argument ..........................................................................................................................................9

I.      THE TRANSACTION AGREEMENTS BAR PLAINTIFFS' CLAIMS..........................9

        A.      Plaintiffs Covenanted Not To Sue Mr. Milken ......................................................9

        B.      Plaintiffs' Claims Are Also Barred By Their Explicit Disclaimers of
                Collateral Representations ......................................................................................13

II.     THESE CONTRACTUAL LIMITATIONS ARE ENFORCEABLE...............................14

        A.      Delaware Law Applies............................................................................................14

        B.      The Provisions that Bar Plaintiffs' Claims Are Enforceable .................................16

III.    PLAINTIFFS' CLAIM UNDER THE TEXAS SECURITIES ACT ALSO FAILS ........19

Conclusion ......................................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Abry Partners V, L.P. v. F&W Acquisition LLC*,
  891 A.2d 1032 (Del. Ch. 2006)........................................................................16, 18

*Axis Reinsurance Co. v. HLTH Corp.*,
  993 A.2d 1057 (Del. 2010) .........................................................................................12

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719, *opinion modified on denial of reh'g*,
  355 F.3d 356 (5th Cir. 2003) ....................................................................................15

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
  17 N.Y.3d 269 (2011) ................................................................................................12

*Debakey Corp. v. Raytheon Serv. Co.*,
  C.A. No. 14947, 2000 WL 1273317 (Del. Ch. Aug. 25, 2000)...............................18

*Dresser-Rand Co. v. Bolick*,
  No. 14-12-00192-CV, 2013 WL 3770950 (Tex. App. July 18, 2013) ....................19

*Great Lakes Chem. Corp. v. Pharmacia Corp.*,
  788 A.2d 544 (Del. Ch. 2001)............................................................................ 17-18

*Homan v. Turoczy*,
  C.A. No. 19220, 2005 WL 2000756 (Del. Ch. Aug. 12, 2005)...............................18

*MBIA Ins. Corp. v. Royal Indem. Co.*,
  426 F.3d 204 (3d Cir. 2005).......................................................................................16

*Mkt. Am., Inc. v. Google, Inc.*,
  C.A. 09-494-GMS, 2011 WL 1485616 (D. Del. Apr. 19, 2011)............................15

*Organ v. Byron*,
  435 F. Supp. 2d 388 (D. Del. 2006)..........................................................................16

*Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*,
  C.A. No. 19209, 2002 WL 1558382 (Del. Ch. July 9, 2002).................................18

*RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*,
  45 A.3d 107 (Del. 2012) ....................................................................................9, 16, 17

*Russul Corp. v. Zim Am. Integrated Shipping Servs. Co.*,
  No. 06 Civ. 0037 (JCF), 2009 WL 3247141 (S.D.N.Y. Oct. 5, 2009) ...................13

*Seven Investments, LLC v. AD Capital, LLC*,
  32 A.3d 391 (Del. Ch. 2011)............................................................................... 11-12

*Sonitrol Holding Co. v. Marceau Investissements*,
   607 A.2d 1177 (Del. 1992) ...................................................................................12

*St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*,
   C.A. No. 19346, 2003 WL 22659875 (Del. Ch. Nov. 5, 2003)..............................18

*Travelers Indem. Co. v. Lake*,
   594 A.2d 38 (Del. 1991) ......................................................................................20

*Tse v. Ventana Med. Sys., Inc.*,
   123 F. Supp. 2d 213 (D. Del. 2000)............................................................... 12-13

*Unocal Corp. v. Dickinson Res., Inc.*,
   889 S.W.2d 604 (Tex. App. 1994), *writ denied*,
   907 S.W.2d 453 (Tex. 1995)................................................................................19

*VGS, Inc. v. Castiel*,
   C.A. 17995, 2003 WL 723285 (Del. Ch. Feb. 28, 2003).......................................15

*Weiss v. Nw. Broad. Inc.*,
   140 F. Supp. 2d 336 (D. Del. 2001).....................................................................15

*Young v. Valt.X Holdings, Inc.*,
   336 S.W.3d 258 (Tex. App. 2010).......................................................................19

## Statutes and Rules

Fed. R. Civ. P. 56...................................................................................................9

Tex. Civ. Stat. Art. 581-33....................................................................................19

## Other Authorities

Restatement (Second) of Conflicts § 145 ...............................................................20

## Statement of the Nature and State of the Proceedings

Plaintiffs Scantron Corporation ("Scantron") and Harland Clarke Holdings Corporation ("Harland Clarke") filed this action against defendants Michael Milken ("Milken") and Kalyanaraman Srinivasan ("Raman") on June 17, 2013, in Texas state court.  Plaintiffs allege that defendants induced the sale of a business called GlobalScholar (the "Transaction") through misrepresentations and omissions, and bring several claims on that basis.  *See, e.g.*, First Am. Compl., filed Oct. 11, 2013 (D.I. No. 26) ("FAC") ¶¶ 8-10, 35-77.  Defendants removed this case to the United States District Court for the Western District of Texas on August 13, 2013, *see* D.I. No. 1, and then obtained a transfer to this Court.  *See* D.I. No. 61 (the "Transfer Order").

The sale of GlobalScholar was a $135 million transaction effected by a set of heavily-negotiated agreements, dated as of December 15, 2010 (the "Transaction Agreements").  Both buyer and seller were represented by major international law firms.  The Transaction Agreements include, as relevant here, a "Securities Purchase Agreement" (the "Purchase Agreement") between Scantron and KUE Digital International LLC, which is the non-party entity that sold GlobalScholar ("KUE Digital," or the "Seller"), and several "Limited Guarantee" agreements between Scantron and KUE Digital's principal equity holders and chairman.  *See* Declaration of David S. Kyman, filed concurrently herewith ("Kyman Decl.") ¶¶ 1-2 & Exs. A-B.

These Agreements expressly bar any claims relating to the Transaction against "Non-Recourse Parties" such as Mr. Milken.  The Agreements also expressly disclaim reliance on collateral representations not set forth in the Agreements.  These provisions, which are fully enforceable under controlling authority, completely bar plaintiffs' claims.  Accordingly, Mr. Milken respectfully requests the entry of summary judgment in his favor.

## Summary of Argument

1.      In 2011, non-party KUE Digital sold an education technology business called GlobalScholar to plaintiff Scantron for approximately $135 million.  This sale was effected by heavily-negotiated Transaction Agreements.  Scantron, which is ultimately owned by billionaire Ron Perelman, was represented by a team of attorneys at Skadden, Arps, Meagher & Flom, LLP in negotiating the Agreements.  Scantron was also advised by Ernst & Young during the course of an extensive due diligence process that led up to the execution of the Agreements.

2.      The Transaction Agreements comprehensively address every aspect of the GlobalScholar sale.  As relevant here, the Agreements specify in detail what claims could and could not be brought in the event of a dispute; list all representations that were made in connection with the Transaction and acknowledge that reliance on other representations was disclaimed; and provide that Delaware law applies to all claims relating to the Agreements.

3.      Among the claims that were expressly prohibited were any claims against "Non-Recourse Parties," who are certain non-parties to the Transaction Agreements.  Plaintiff Scantron expressly covenanted that neither it nor its parent, plaintiff Harland Clarke, would bring any claims against such parties in connection with the Transaction.  Mr. Milken is a protected Non-Recourse Party.  Plaintiffs' covenants not to sue extend to all their claims against Mr. Milken.

4.      In addition, the Agreements expressly list the extensive representations and warranties that were made in connection with the Transaction; include disclaimers by the Seller of any other representations; and include disclaimers by plaintiffs of reliance on any other representations.  Plaintiffs thus expressly disclaimed the very collateral representations on which they now sue.  Those disclaimers independently bar plaintiffs' claims.

5.     These contractual limitations are fully enforceable under controlling Delaware Supreme Court authority, including as to claims sounding in fraud.   Accordingly, Mr. Milken respectfully requests that the Court grant summary judgment in his favor on all claims.

## Statement of Facts

The Underlying Transaction.   In the fall of 2010, plaintiff Scantron and its parent, Harland Clarke, began discussions with non-party KUE Digital regarding the possible acquisition of its GlobalScholar business, which designed and sold customizable, integrated software systems for use by schools and school systems.   *See, e.g.*, Declaration of Michael Neumann, filed Sept. 30, 2013 (D.I. No. 18-4) ("Neumann Decl.") ¶ 3; FAC ¶¶ 8, 17.   For months afterward, Scantron and Harland Clarke conducted due diligence, and the parties negotiated the terms of the sale.   Neumann Decl. ¶¶ 4-5; *see also* FAC ¶¶ 25-27.   Plaintiffs were represented by Skadden, Arps, Meagher & Flom, LLP and Ernst & Young; KUE Digital was represented by Latham & Watkins LLP.   Neumann Decl. ¶ 4.   Scantron ultimately acquired GlobalScholar from KUE Digital in a sale that closed on or about January 3, 2011 for a purchase price of approximately $135 million.   *See, e.g.*, FAC ¶ 30.

The Transaction Agreements.   Scantron's purchase of GlobalScholar was effected by a 78-page Purchase Agreement (135 pages including Schedules) and several related agreements, including Limited Guarantees by Knowledge Universe Education L.P. ("KUE LP") and Mr. Raman.   *See* Kyman Decl. Ex. A (KUE LP Limited Guarantee); *id.* Ex. B (relevant excerpts of Purchase Agreement).[1]   These Limited Guarantees partially guaranteed the Seller's performance of obligations in the Purchase Agreement, including obligations based on the Seller's contractual

---

[1]   The complete Purchase Agreement, except Schedules and Exhibits, is attached as Exhibit C to the Declaration of Stanley Maron filed on September 30, 2013 (D.I. No. 18-2).  Mr. Milken will provide the entire Agreement, including the lengthy Exhibits, upon request.

representations.  *See* KUE LP Guarantee (Kyman Decl. Ex. A) ¶ 1.  Mr. Milken did not provide, and was never asked to provide, any guarantee of any obligations relating to the Transaction. *See* Kyman Decl. ¶ 2.

<u>The Covenants Not To Sue and Limitations on Liability.</u>  In exchange for the guarantees, Scantron agreed to significant limitations on its and its Affiliates' ability to bring claims for relief relating to the Transaction—including by barring claims against Non-Recourse Parties entirely.  *See* KUE LP Guarantee (Kyman Decl. Ex. A) ¶ 6.  In Paragraph 6(b) of the KUE LP Guarantee, Scantron agreed as follows:

> **The Guaranteed Party [Scantron] hereby covenants and agrees that it shall not institute, and shall cause each of its Affiliates [including Harland Clarke] and representatives not to institute, directly or indirectly, any Action arising under, or in connection with, this Guarantee, the Purchase Agreement or the transactions contemplated thereby against the Guarantor [non-party KUE LP] or any Non-Recourse Party [including Milken]** except for (i) claims by the Guaranteed Party against the Guarantor under and in accordance with this Guarantee, (ii) claims by the Guaranteed Party against Seller under and in accordance with the Purchase Agreement, or (iii) claims under and in accordance with the Restrictive Covenant Agreement.  **Recourse against the Guarantor and/or the Seller in accordance with Actions permitted by clauses (i) through (iii) immediately above shall be the sole and exclusive remedy of the Guaranteed Party and all of its Affiliates against the Guarantor or any Non-Recourse Party** in respect of any liabilities or obligations arising under, or in connection with, the Purchase Agreement or any of the other agreements contemplated thereby, or the transactions contemplated thereby, and such recourse shall be subject to the limitations described herein and therein.

*Id.* ¶ 6(b) (emphases added).  This prohibition against bringing claims against "any Non-Recourse Party" followed Paragraph 6(a), which defined such parties and similarly prohibited claims against them:

> Without limiting any obligations of Seller under the Purchase Agreement … or Guarantor [KUE LP] hereunder, the Guaranteed Party [Scantron] agrees and acknowledges that no Person other

than the Guarantor has any obligations under this Guarantee and that, notwithstanding that the Guarantor is a limited partnership, **the Guaranteed Party has no remedy, recourse or right of recovery against, or contribution from, in each case, with respect to this Guarantee (i) any former, current or future general or limited partners, stockholders, holders of any equity, partnership or limited liability company interest, officer, member, manager, director, employees, agents, controlling Persons, assignee or any Affiliates of the Guarantor (other than Seller), or (ii) any former, current or future general or limited partners, stockholders, holders of any equity, partnership or limited liability company interest, officer, member, manager, director, employees, agents, attorneys, controlling Persons, assignee or Affiliates (other than Guarantor) of any of the foregoing (those Persons and entities described in the foregoing clauses (i) and (ii) being referred to herein collectively as "Non-Recourse Parties"**), through the Guarantor, Seller or otherwise, whether by or through attempted piercing of the corporate veil or similar action, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute, regulation or applicable Law, by or through a claim by or on behalf of the Guarantor, Seller or any Purchased Subsidiary directly or indirectly against the Guarantor or any Guarantor Affiliate, or otherwise, except, in each case, for (v) claims against the Guarantor arising from intentional fraud by the Guarantor; <u>provided</u>, that any such claims shall be subject to the Caps, (w) claims arising from a material breach of any of the representations and warranties set forth in <u>Section 5</u>, (x) its rights against the Guarantor under this Guarantee, (y) its rights against Guarantor under the Restrictive Covenant Agreement and (z) its rights against Seller under the Purchase Agreement ….

*Id.* ¶ 6(a) (emphases, except underscoring, added).  Mr. Milken is a Non-Recourse Party as defined above, and was neither the "Seller" nor a "Guarantor" as to whom the right to bring claims relating to the Transaction was reserved.

Scantron also agreed that even claims against the Guarantors would be limited by agreed upon liability "Caps" and otherwise restricted.  *Id.* ¶¶ 1, 6.  These limitations expressly apply to claims sounding in fraud.  *Id.* ¶ 6(a) (allowing "claims against the Guarantor arising from intentional fraud by the Guarantor; <u>provided</u>, that any such claims shall be subject to the Caps").

The Exclusive Remedy Provisions.  These provisions of the Limited Guarantees dovetail with provisions in the Purchase Agreement.  There, the parties agreed as follows:

> Exclusive Remedy.  Each Party hereto acknowledges and agrees that, should the Closing occur, **the sole and exclusive remedy of any Person with respect to any and all matters arising out of, relating to or connected with this Agreement and the other transactions contemplated hereby shall be a claim pursuant to the provisions of Section 6.02(a) [regarding tax indemnity] or this Article VIII [regarding indemnity];** provided, that the provisions of this Section 8.07 shall not (x) apply to any claims that arise from intentional fraud or a Willful and Material Breach by Seller or Buyer or (y) limit any injunctive relief or other specific performance remedy under Section 6.08; provided, further, that nothing in this Section 8.07 is intended to or shall limit Buyer's rights to pursue any and all remedies available to it under the Restrictive Covenant Agreement and/or any of the Guarantees.

Purchase Agreement (Kyman Decl. Ex. B) § 8.07 (emphases, except underscoring, added).

Although not applicable here, a subsequent provision of the Purchase Agreement also expressly prohibits certain claims against the Seller's officers and directors.[2]

The Disclaimers of Reliance on Collateral Representations.  Aside from these limitations on who can be sued, the Transaction Agreements also limit the representations that potentially could be the subject of a later action.  The Purchase Agreement and its Schedules set forth scores of written representations and warranties by the Seller regarding GlobalScholar and its business—including representations in more than twenty separate sections of the Purchase Agreement, along with 57 pages of Schedules containing disclosures.  *See, e.g.*, *id.* §§ 3.01-3.19

---

[2]   That provision bars all claims against officers and directors that are "based upon any alleged misrepresentation or inaccuracy in, or breach of any of the representations, warranties, covenants or agreements of Seller set forth or contained in, this Agreement," except such claims sounding in intentional fraud.  *See* Purchase Agreement (Kyman Decl. Ex. B) § 8.09.  This limitation on claims is immaterial because it addresses only claims based on representations set forth in the Purchase Agreement, and no such claims have been made.

& Schedules.  But no representations by Mr. Milken were recited, and all other representations were expressly disclaimed by the Seller:

> No Other Representations.  Except for the representations and warranties contained in this Agreement or the other Transaction Documents, **Seller makes no express or implied representation or warranty in respect or on behalf of Seller or any of its Affiliates, and Seller disclaims any such representation or warranty, whether by Seller or any of its officers, directors, employees, agents or representatives or any other Person**, and irrespective of when made or delivered, with respect to the execution and delivery of this Agreement or any other Transaction Document, the consummation of the transactions contemplated hereby and thereby or the businesses, assets, liabilities, obligations or prospects of any of the Purchased Subsidiaries or their Subsidiaries, notwithstanding the delivery or disclosure to Buyer or any of its officers, directors, employees, agents or representatives or any other Person of any documentation or other information with respect to the foregoing.

*See id.* § 3.21.   Moreover, the *plaintiffs* also disclaimed the existence of any collateral representations, in capitalized text:

> **EACH OF THE PARTIES HERETO ACKNOWLEDGES THAT THE REPRESENTATIONS AND WARRANTIES BY THE OTHER PARTIES SET FORTH IN THIS AGREEMENT AND ANY CERTIFICATE DELIVERED HEREUNDER, CONSTITUTE THE SOLE AND EXCLUSIVE REPRESENTATIONS AND WARRANTIES OF THE OTHER PARTIES IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED HEREBY**, AND EACH OF THE PARTIES HERETO UNDERSTANDS, ACKNOWLEDGES AND AGREES THAT **ALL OTHER REPRESENTATIONS AND WARRANTIES OF ANY KIND OR NATURE EXPRESS OR IMPLIED** (INCLUDING, BUT NOT LIMITED TO, ANY RELATING TO THE FUTURE FINANCIAL CONDITION OR PROJECTIONS, RESULTS OF OPERATIONS, ASSETS OR LIABILITIES OF THE PURCHASED SUBSIDIARIES OR THEIR SUBSIDIARIES OR ANY OTHER PERSON) **ARE SPECIFICALLY DISCLAIMED BY THE PARTIES.**

*Id.* § 6.06(a) (capitalization in original, emphases added).  The Purchase Agreement also includes an integration clause.  *See id.* § 11.08 ("Complete Agreement.  This Agreement (including the

exhibits hereto and the Disclosure Schedules) and the documents referred to herein (including the Escrow Agreement) contain the complete agreement between the Parties hereto and supersede any prior understandings, agreements or representations by or between the Parties, written or oral, which may have related to the subject matter hereof in any way.").

<u>This Lawsuit.</u>  In January 2011, following the execution of these Agreements and the closing of the sale, Scantron took over GlobalScholar's operations.  Pursuant to terms of the Transaction Agreements, over $6.5 million of the purchase price remained held in escrow, and Scantron was entitled to claim those funds if it discovered "any breach of any representation and warranty" or "breach of any covenant or agreement" in the Purchase Agreement.  *See* Declaration of Stanley Maron, filed Sept. 30, 2013 (D.I. No. 18-2) ("Maron Decl.") ¶¶ 11-13; Purchase Agreement (Kyman Decl. Ex. B) § 8.02(a)(i) & (ii).  In July 2012—a full year and a half after the closing—Scantron authorized the release of all escrowed funds to the Seller, without alleging any breach of representation by the Seller, Mr. Milken or anyone else.  *Id.*

Notwithstanding this, on June 17, 2013, Scantron and Harland Clarke filed this lawsuit in Texas state court, alleging that Milken and Raman had made extra-contractual misrepresentations that induced the sale, and suing for (1) violations of the Texas Securities Act; (2) statutory fraud under the Texas Business & Commerce Code; (3) common law fraud; (4) fraud by nondisclosure; (5) negligent misrepresentation; (6) aiding and abetting fraud; (7) conspiracy; and (8) actual and apparent authority.  *See* D.I. No. 1; FAC ¶¶ 8, 35-77.[3]

Following removal, defendants moved to enforce the Transaction Agreements' forum selection clauses, which mandate a Delaware forum, by seeking a transfer to this Court.  *See* D.I. No. 18.  After extensive briefing, *see* D.I. Nos. 18, 31, 34, 43, 46, 47, 49, 52, 58 & Text Order

---

[3]   Plaintiffs originally named KUE LP and Knowledge Universe Education Holdings, Inc. as defendants as well, but then voluntarily dismissed them.  *See* D.I. No. 15.

dated Oct. 9, 2013, District Judge Xavier Rodriguez granted that motion in a 32-page Order. *See generally* Transfer Order. In that Order, Judge Rodriguez found, among other things, that "the plain language of the Transaction [Agreements] evidences the parties' intent that **whatever claims were brought by Scantron or its Affiliates (including Harland Clarke) against Raman or Milken, those claims would be brought only 'under and in accordance with [the] Guarantee,' 'under and in accordance with the Purchase Agreement,'** or 'under and in accordance with the Restrictive Covenant Agreement,' **and subject to the limitations described therein**." *Id.* at 16 (emphasis added).

<u>Argument</u>

The Transaction Agreements categorically bar plaintiffs' claims against Milken. As these contractual limitations are enforceable, summary judgment is proper. *See* Fed. R. Civ. P. 56; *see RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 118 (Del. 2012) (recognizing the perils of "allowing a fraud claim to progress to a trial" where contract terms bar such a claim).

I.      **THE TRANSACTION AGREEMENTS BAR PLAINTIFFS' CLAIMS**

    A.      **Plaintiffs Covenanted Not To Sue Mr. Milken**

Under both the KUE LP Guarantee and the Purchase Agreement, Scantron unambiguously covenanted that neither it nor Harland Clarke would sue Mr. Milken in connection with the Transaction.

<u>First</u>, in exchange for certain guarantees from KUE LP and other guarantors, Scantron expressly covenanted that neither Scantron nor any of its Affiliates would file "**any Action arising under, or in connection with, this Guarantee, the Purchase Agreement or the transactions contemplated thereby**" against any Non-Recourse Party. KUE LP Guarantee (Kyman Decl. Ex. A) ¶ 6(b) (emphasis added). Scantron also expressly agreed that "[r]ecourse against the Guarantor and/or the Seller in accordance with Actions permitted by clauses (i) through (iii)

immediately above"—clauses that do <u>not</u> encompass any of plaintiffs' claims against Mr. Milken in this case—"**shall be the sole and exclusive remedy of the Guaranteed Party and all of its Affiliates against . . . any Non-Recourse Party** in respect of any liabilities or obligations arising under, or in connection with, the Purchase Agreement or any of the other agreements contemplated thereby, or the transactions contemplated thereby, and such recourse shall be subject to the limitations described herein and therein." *Id.* (emphasis added).

Mr. Milken is a protected Non-Recourse Party because he is an officer and equity holder of KUE Management Inc., which is the general partner of KUE LP, the Guarantor. *See* Kyman Decl. ¶ 3; Maron Decl. ¶ 3. Indeed, Judge Rodriguez has already found that "Defendant Michael Milken is a Non-Recourse Party as defined in the Limited Guarantee." Transfer Order at 5 & n.4, 16; *see id.* at 26 ("Section 6 allows Non-Recourse parties to enforce the no-recourse provisions, under which Scantron agreed on its behalf and on behalf of Harland Clarke not to institute any action except for 'under and in accordance with the Guarantee' or 'under and in accordance with the Purchase Agreement,' and 'such recourse shall be subject to the limitations described herein and therein.'"). As Mr. Milken is a Non-Recourse Party and did not provide any guarantee, this prohibition against bringing claims extends to and benefits Milken.

Likewise, this prohibition against suit also extends to claims by plaintiff Harland Clarke, as it owns and operates Scantron and hence is an "Affiliate" of Scantron. *See* FAC ¶ 12; Purchase Agreement (Kyman Decl. Ex. B) § 10.01 (defining "Affiliate" as "any other Person controlling, controlled by or under common control with such particular Person"); KUE LP Guarantee (Kyman Decl. Ex. A) at 1 (capitalized terms not otherwise defined have definition provided in Purchase Agreement). Judge Rodriguez has already found that Harland Clarke is bound by the Transaction Agreements based on "the language of the contract itself." *See*

Transfer Order at 17; *see id.* at 23-24 ("Scantron agreed that it and Harland Clarke would sue only 'under and in accordance with' the Guarantees, the Purchase Agreement, and the Restrictive Covenant Agreement," and "[t]o the extent Harland Clarke may sue Raman and Milken, it is under and in accordance with the agreements").[4]

<u>Second</u>, the Purchase Agreement also provides that the "**sole and exclusive remedy** of any Person with respect to any and all matters arising out of, relating to or connected with this Agreement and the other transactions contemplated hereby" would be indemnity claims and "claims that arise from intentional fraud or a Willful and Material Breach by Seller or Buyer." Purchase Agreement (Kyman Decl. Ex. B) § 8.07 (emphasis added). Plaintiffs' claims against Milken equally violate this provision, for they neither seek indemnity nor arise from fraud or breaches by the Seller. This broad limitation on liability applies to "any Person," including Harland Clarke. *Id.*

<u>Third</u>, these limitations apply not only to claims for breach of contract, but also to claims of fraud. By its terms, the agreed covenant not to sue prohibits "**any** Action" against Non-Recourse Parties relating to the Transaction, and not just breach of contract claims. KUE LP Guarantee (Kyman Decl. Ex. A) ¶ 6(b) (emphasis added); *see id.* ("Recourse against the Guarantor and/or the Seller … shall be the sole and exclusive remedy of the Guaranteed Party and all of its Affiliates against the Guarantor or any Non-Recourse Party …"); *see also* Purchase Agreement (Kyman Decl. Ex. B) § 8.07. This broad language encompasses—and bars—all claims against Non-Recourse Parties relating to the Transaction, including fraud claims. *See, e.g.*, *Seven Investments, LLC v. AD Capital, LLC*, 32 A.3d 391, 398 (Del. Ch. 2011) (release of

---

[4]   Judge Rodriguez also found that Harland Clarke was bound by the Transaction Agreements based on its status as a third-party beneficiary and principles of estoppel. Transfer Order at 19-24.

"all claims, liabilities, demands and causes of action know or unknown . . . arising out of or in any way related with [agreement]" barred fraud claims).

Moreover, that the Agreements explicitly allow some intentional fraud claims—but not those filed here—further confirms that plaintiffs' fraud claims are barred. Paragraph 6(a) of the KUE LP Guarantee exempts from the broad covenants not to sue "**claims against the Guarantor arising from intentional fraud by the Guarantor; provided, that any such claims shall be subject to the Caps**." KUE LP Guarantee (Kyman Decl. Ex. A) ¶ 6(a) (emphasis added). There would be no need for this allowance of fraud claims against the Guarantor if all claims of fraud were routinely permitted; such a reading would render this clause meaningless surplusage. *See Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992) ("Under general principles of contract law, a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless."); *see also Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 277 (2011) ("the explicit exclusion of fraud claims from the Master Release suggests that the Members Release is not so limited"). In addition, this clause limits the Guarantor's liability even for fraud claims to the agreed "Caps"; it would be perverse to read Paragraph 6 of the Limited Guarantees to permit limitless fraud claims against Non-Recourse Parties when even the Guarantor is subject to only capped liability for fraud claims expressly allowed by the Guarantee. *See, e.g.*, *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010) (courts should not adopt an "interpretation that leads to unreasonable results, but instead will adopt the construction that is reasonable and that harmonizes the affected contract provisions").

In all events, many of these issues have already been decided by Judge Rodriguez, and such determinations are entitled to deference as the law of the case. *See, e.g.*, *Tse v. Ventana*

*Med. Sys., Inc.*, 123 F. Supp. 2d 213, 221 (D. Del. 2000) (Sleet, J.) ("Principles of comity dictate that when a predecessor court of equivalent jurisdiction decides an issue, that decision should govern in subsequent stages of the same case.") (citations omitted); *Russul Corp. v. Zim Am. Integrated Shipping Servs. Co.*, No. 06 Civ. 0037 (JCF), 2009 WL 3247141, at *4 (S.D.N.Y. Oct. 5, 2009) (where transferor court concluded that forum selection clause applied and required transfer, other terms of contracts also necessarily applied under law of the case doctrine).  In his Transfer Order, Judge Rodriguez determined that Harland Clarke, no less than Scantron, was bound by the limitations of the Transaction Agreements.  *See* Transfer Order at 23-24.  Judge Rodriguez determined that Mr. Milken was entitled to the benefits of those Agreements as a Non-Recourse Party.  *Id.* at 5 n.4, 16, 26.  And Judge Rodriguez determined that plaintiffs' claims of fraud, no less than other claims, were subject to the limitations of the Agreements.  *Id.* at 12, 16-17.  The Court need not revisit these decided issues.

### B.    <u>Plaintiffs' Claims Are Also Barred By Their Explicit Disclaimers of Collateral Representations</u>

Plaintiffs' claims are also barred because Scantron affirmatively disclaimed reliance on the extra-contractual alleged representations on which plaintiffs now sue.

The Purchase Agreement lists extensive representations and warranties that the Seller made in connection with the Transaction, Purchase Agreement (Kyman Decl. Ex. B) §§ 3.01-3.20 & Schedules, in addition to representations made by Scantron, *id.* §§ 4.01-4.07.  The Purchase Agreement also sets forth a detailed contractual indemnity scheme whereby the Seller and/or Guarantors could be liable if any of the Seller's representations proved false.  *Id.* §§ 8.02, 8.04-8.06.  And the Purchase Agreement includes both a disclaimer *by the Seller* of any other representations, "whether by Seller or any of its officers, directors, employees, agents or representatives or any other Person," Purchase Agreement (Kyman Decl. Ex. B) § 3.21, as well

as a disclaimer *by Scantron* of any such collateral representations. *See* Purchase Agreement (Kyman Decl. Ex. B) § 6.06(a) ("EACH OF THE PARTIES HERETO ACKNOWLEDGES THAT THE REPRESENTATIONS AND WARRANTIES BY THE OTHER PARTIES SET FORTH IN THIS AGREEMENT … CONSTITUTE THE SOLE AND EXCLUSIVE REPRESENTATIONS AND WARRANTIES OF THE OTHER PARTIES IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED HEREBY, AND … ALL OTHER REPRESENTATIONS AND WARRANTIES OF ANY KIND OR NATURE EXPRESS OR IMPLIED … ARE SPECIFICALLY DISCLAIMED BY THE PARTIES").

This structure makes sense in a complex transaction between sophisticated corporate parties such as here. Following extensive due diligence, the parties agreed on the material representations and warranties for which the Seller could be liable if untrue, and defined the available recourse for nonconformity with those representations and warranties. To avoid future disputes, the parties also mutually disclaimed any other representations. But plaintiffs now seek to pursue claims based on the very extra-contractual representations that they disclaimed. Plaintiffs' claims against Mr. Milken are thus not only inconsistent with their agreement not to sue Non-Recourse Parties at all, but also with their disclaimer of reliance on collateral representations. That disclaimer independently bars their claims.

## II.     THESE CONTRACTUAL LIMITATIONS ARE ENFORCEABLE

These limitations are fully enforceable under controlling Delaware Supreme Court law.

### A.     Delaware Law Applies

First, Delaware law clearly applies to the issues raised in this motion under the Transaction Agreements' broad choice-of-law provisions:

> **All matters relating to this Agreement or the breach, interpretation, construction, validity, termination and enforcement of this Agreement shall be governed by and**

> **construed in accordance with the domestic laws of the State of Delaware** without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause application of Laws of any jurisdiction other than the State of Delaware.

Purchase Agreement (Kyman Decl. Ex. B) § 11.10 (emphases added); *accord* KUE LP Guarantee (Kyman Decl. Ex. A) ¶ 12.   Delaware federal courts sitting in diversity apply Delaware's choice-of-law rules, *see, e.g.*, *Weiss v. Nw. Broad. Inc.*, 140 F. Supp. 2d 336, 342 (D. Del. 2001) (Sleet, C.J.), and "[u]nder Delaware law, express choice of law provisions in contracts are generally given effect." *Id.* (internal quotations omitted).

Accordingly, as the Transaction Agreements provide, "[a]ll matters relating to" the Agreements "or the breach, interpretation, construction, validity, termination and enforcement of" those Agreements are governed by Delaware law.  Purchase Agreement (Kyman Decl. Ex. B) § 11.10; KUE LP Guarantee (Kyman Decl. Ex. A) ¶ 12.  This clearly includes and encompasses the interpretation, application and enforceability of the contractual defenses set forth in the Transaction Agreements themselves.  *See VGS, Inc. v. Castiel*, C.A. 17995, 2003 WL 723285, at *7 n.29 (Del. Ch. Feb. 28, 2003) ("The law governing the Agreements also governs the effect, if any, that the Agreements may have on claims for fraud and negligent misrepresentation."); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726, 729, *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (applying contractually-elected law to determine validity of contractual disclaimers of reliance).

Moreover, because broad choice-of-law provisions such as those in the Agreements apply not only to contract disputes but also to claims of fraud, Delaware law will govern the substance of plaintiffs' claims as well.  *See, e.g.*, *Mkt. Am., Inc. v. Google, Inc.*, C.A. 09-494-GMS, 2011 WL 1485616, at *3 (D. Del. Apr. 19, 2011) (Sleet, C.J.) (finding Delaware law applicable to claims in tort where choice of law provision applied to "all disputes that may arise under this

Agreement" and was not explicitly limited to contractual disputes); *Organ v. Byron*, 435 F. Supp. 2d 388, 391-92 (D. Del. 2006) ("The purview of a contractual choice of law provision is not limited to contract claims; such a clause can govern 'claims in tort . . . on the grounds that false contractual representations were made.'"); *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1047 (Del. Ch. 2006) (rejecting argument that "contracting parties only meant for Delaware law to govern contract claims that might rise among the parties, but not claims in tort").

### B.    The Provisions that Bar Plaintiffs' Claims Are Enforceable

Under Delaware law, both covenants not to sue and disclaimers of reliance on collateral representations are enforceable, and bar claims of fraud as a matter of law. *See RAA Mgmt.*, 45 A.3d at 118-19; *see also MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 213 (3d Cir. 2005) (under Delaware law, a contract can "foreclose" an assertion of fraud "not only by waiving 'fraud' but also by setting forth terms clearly inconsistent with reasonable reliance on extracontractual representations").

*RAA Management* is instructive.  A prospective (but ultimately unsuccessful) purchaser of a company sued to recover its due diligence costs in evaluating the potential purchase, claiming that it only proceeded with due diligence in the first place because the defendant company had concealed and misrepresented material information.  45 A.3d at 109.  But in an initial non-disclosure agreement, the plaintiff had agreed that "neither the Company nor any Company Representative is making **any** representation or warranty, express or implied, as to the accuracy or completeness of the Evaluation Material or of **any** other information concerning the Company provided or prepared by or for the Company, and none of the Company nor the Company Representatives, will have **any** liability to you or any other person resulting from your use of the Evaluation Material or any such other information." *Id.* at 110 (emphasis original to

case, added to contract).  The plaintiff had also agreed not to bring "**any** claims . . . in connection

with any such transaction unless and until [the plaintiff] shall have entered into a definitive Sale

Agreement." *Id.* at 110-11 (emphasis original to case, added to contract).

Based on these provisions, the Delaware Supreme Court affirmed the dismissal of

intentional fraud claims at the pleading stage, pursuant to a motion to dismiss. *Id.* at 119.  As the

Court explained, this contract language disclaimed all liability without providing any "exception

for 'intentional' or 'fraudulent' misrepresentations," *id.* at 113, and therefore barred claims of

fraud even absent a disclaimer of "liability for fraudulent statements *specifically*."  *Id.* at 115

(emphasis in original); *see id.* ("Under Paragraphs 7 and 8 of the NDA, RAA acknowledged that

. . . Savage would have no liability, and could not be sued, for *any* allegedly inaccurate or

incomplete information provided by Savage to RAA during the due diligence process.")

(emphasis in original).  Moreover, these liability limiting provisions were fully enforceable:

> The efficient operation of capital markets is dependent upon the
> uniform interpretation and application of [liability-limiting]
> language in contracts or other documents.  The non-reliance and
> waiver clauses in the NDA preclude the fraud claims asserted by
> RAA against Savage.  Under New York and Delaware law, the
> reasonable commercial expectations of the parties, as set forth in
> the non-reliance disclaimer clauses in Paragraph 7 and the waiver
> provisions in Paragraph 8 of the NDA, must be enforced.
> Accordingly, the Superior Court properly granted Savage's motion
> to dismiss RAA's Complaint.

*Id.* at 119.[5]

Numerous other authorities equally support enforcement of the contractual provisions at

issue here.  For example, the Chancery Court explained in *Great Lakes Chem. Corp. v.*

---

[5]   The parties in *RAA Management* disputed whether New York or Delaware law applied.
Although the Supreme Court "assume[d]" that New York law—the law selected by the parties'
choice-of-law provision—applied, it also "conclude[d] that the outcome would be the same
under Delaware law."  45 A.3d at 112.

*Pharmacia Corp.*, 788 A.2d 544, 555 (Del. Ch. 2001), that contractual disclaimers must be enforced, even as against claims of fraud, for a contract to "be worth the paper it is written on":

> Were this Court to allow Great Lakes to disregard the clear terms of its disclaimers and to assert its claims of fraud, the carefully negotiated and crafted Purchase Agreement between the parties would similarly not be worth the paper it is written on.  To allow Great Lakes to assert, under the rubric of fraud, claims that are explicitly precluded by contract, would defeat the reasonable commercial expectations of the contracting parties and eviscerate the utility of written contractual agreements.

788 A.2d at 556.  The list of authorities similarly rejecting claims of fraud based on contractual disclaimers is long.  *See, e.g., Abry Partners V*, 891 A.2d at 1057-58 ("[A] party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim."); *St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*, C.A. No. 19346, 2003 WL 22659875, at *4 (Del. Ch. Nov. 5, 2003) ("St. James bargained away its right to claim that it was relying upon any representations made to it during the due diligence process that were not otherwise encompassed within a specific provision in the Purchase Agreement."); *Homan v. Turoczy*, C.A. No. 19220, 2005 WL 2000756, at *18 (Del. Ch. Aug. 12, 2005) (similar); *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, C.A. No. 19209, 2002 WL 1558382, at *10 (Del. Ch. July 9, 2002) (similar); *see also Debakey Corp. v. Raytheon Serv. Co.*, C.A. No. 14947, 2000 WL 1273317, at *27 (Del. Ch. Aug. 25, 2000) (it is "customary" for representations and warranties that a party deems material to be set forth in the contract itself, and "[t]he absence of such contract protections suggests that [parties asserting fraud] did not believe that [they] needed them, presumably because they had performed their own due diligence ….").

Finally, the result would be the same even if Texas law applied, although it does not.  *See, e.g.*, *Dresser-Rand Co. v. Bolick*, No. 14-12-00192-CV, 2013 WL 3770950, at *9 (Tex. App. July 18, 2013) (enforcing disclaimer to defeat fraudulent inducement claim where "bold, underlined, all capitals provision . . . reiterate[d] the absence of any extra-contractual promise or representation"); *Unocal Corp. v. Dickinson Res., Inc.*, 889 S.W.2d 604, 609-10 (Tex. App. 1994) (enforcing contractual waiver provision against plaintiff's claims, including fraud claim, because the "waiver extinguished [plaintiff's] right to sue [defendant] as effectively as a prior judgment between the parties"), *writ denied*, 907 S.W.2d 453 (Tex. 1995).

Accordingly, because the Transaction Agreements bar plaintiffs' claims against Mr. Milken and these limitations are enforceable, judgment should be entered in Mr. Milken's favor.

## III.    PLAINTIFFS' CLAIM UNDER THE TEXAS SECURITIES ACT ALSO FAILS

Last, plaintiffs' claim under the Texas Securities Act ("TSA") fails for additional reasons. As shown above, the parties contractually agreed that the laws of Delaware, and not Texas, would apply to plaintiffs' claims.  Plaintiffs thus waived the right to rely on the TSA at all, and this waiver is enforceable.  *See, e.g.*, *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 266 (Tex. App. 2010) ("Any party wishing to avail itself of the protections of . . . Texas securities laws could choose not to agree to a forum-selection provision . . . mandating the application of foreign law.").  Moreover, plaintiff Harland Clarke did not purchase any securities and has no standing under the TSA.  *See, e.g.*, Tex. Civ. Stat. Art. 581-33 (creating liability only "to the person buying the security").  And Texas law would not apply to Scantron's claims even without the agreed Delaware choice-of-law clause because Scantron has virtually no connection to Texas.[6] Accordingly, plaintiffs' claims under the TSA should be dismissed for these additional reasons.

---

[6]    Under Delaware choice-of-law rules, "the local law of the state which 'has the most significant relationship to the occurrence and the parties' will govern the rights of litigants in a

## Conclusion

For the foregoing reasons, Mr. Milken's motion for summary judgment should be granted, and judgment entered in his favor on all claims.

|  |  |
|---|---|
|  | _/s/ John M. Seaman_ |
| OF COUNSEL: | Kevin G. Abrams (#2375) |
|  | John M. Seaman (#3868) |
| John B. Quinn *(pro hac vice)* | ABRAMS & BAYLISS LLP |
| Susan R. Estrich *(pro hac vice)* | 20 Montchanin Road, Suite 200 |
| Michael T. Zeller *(pro hac vice)* | Wilmington, DE  19807 |
| B. Dylan Proctor *(pro hac vice)* | Telephone:  (302) 778-1000 |
| QUINN EMANUEL URQUHART | Facsimile:  (302) 778-1001 |
| & SULLIVAN LLP | abrams@abramsbayliss.com |
| 865 S. Figueroa St., 10th Floor | seaman@abramsbayliss.com |
| Los Angeles, California  90017 |  |
| (213) 443-3000 | *Attorneys for Defendant Michael Milken* |

Dated:  July 18, 2014

---

tort suit," with consideration given to the following relevant factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered." *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) (citing Restatement (Second) of Conflicts § 145).  Scantron is not incorporated in Texas, is not headquartered in Texas, and does not have offices in Texas.  *See* Declaration of Michael O'Donnell, filed Sept. 30, 2013 (D.I. No. 18-3) ¶¶ 2-4 & Exs. A-D. Texas does not have "the most significant relationship" to the sale of Delaware-organized, Washington-and-India-headquartered companies (GlobalScholar) by a Delaware-organized, California-headquartered company (KUE Digital) to a Delaware-incorporated, Minnesota-headquartered corporation (Scantron).  *See* Neumann Decl. ¶ 8; Purchase Agreement (Kyman Decl. Ex. B) §§ 2.01, 3.01, 4.01; Maron Decl. ¶ 2.