UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| HARLAND CLARKE HOLDINGS CORP. AND SCANTRON CORPORATION,<br><br>      Plaintiffs,<br><br>   -against-<br><br>MICHAEL MILKEN AND KALYANARAMAN SRINIVASAN,<br><br>      Defendants. | Case No. 1:14-CV-00138-GMS<br><br>Hon. Gregory M. Sleet, C.J. |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MICHAEL MILKEN'S MOTION FOR SUMMARY JUDGMENT

ABRAMS & BAYLISS LLP
Kevin G. Abrams (SBN 2375)
John M. Seaman (SBN 3868)
20 Montchanin Road, Suite 200
Wilmington, DE 19807
Telephone:   (302) 778-1000
Facsimile:    (302) 778-1001
abrams@abramsbayliss.com
seaman@abramsbayliss.com

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
John B. Quinn (*pro hac vice*)
Susan R. Estrich (*pro hac vice*)
Michael T. Zeller (*pro hac vice*)
B. Dylan Proctor (*pro hac vice*)
865 South Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendant Michael Milken*

DATED: September 12, 2014

**TABLE OF CONTENTS**

**Page**

Preliminary Statement ...................................................................................................................1

Argument .......................................................................................................................................2

I.  The Covenant Not To Sue In Paragraph 6(b) Of The KUE LP Limited Guarantee Bars Plaintiffs' Claims Against Mr. Milken ......................................................................2

   A.  Whether Plaintiffs' Claims Relate To The Guarantor's "Obligations" Is Irrelevant Because Paragraph 6(b) Bars Claims Relating To The *Transaction* .................................................................................................................3

   B.  Plaintiffs' Argument That Mr. Milken Is Not A Non-Recourse Party Also Seeks To Rewrite The Agreement ...........................................................................4

   C.  Plaintiffs Misquote The Contract In Arguing That The Limited Guarantees Have Terminated *Ab Initio* ......................................................................................5

   D.  Plaintiffs' Argument That The Covenant Not To Sue Is Unenforceable Is Contrary To Controlling Delaware Supreme Court Authority ................................7

II. The Purchase Agreement's Exclusive Remedy Clause Also Bars Plaintiffs' Claims .................................................................................................................................8

III. The Disclaimer Of Extra-Contractual Representations Also Bars Plaintiffs' Claims .................................................................................................................................9

Conclusion ...................................................................................................................................10

i

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Abry Partners V, L.P. v. F&W Acquisition LLC*,
　891 A.2d 1032 (Del. Ch. 2006) ................................................................................................ 1, 7

*Anvil Holding Corp. v. Iron Acquisition Co.*,
　C.A. Nos. 7975-VCP, N12C-053-DFP, 2013 WL 2249655 (Del. Ch. May 17, 2013) ........... 10

*Appleby v. Glaxo Wellcome, Inc.*,
　2005 WL 3440440 (D.N.J. Dec. 13, 2005) .................................................................................. 2

*BASF Corp. v. POSM II Props. P'ship, L.P.*,
　C.A. No. 3608-VCS, 2009 WL 522721 (Del. Ch. Mar. 3, 2009) ............................................... 3

*Chester City Sch. Auth. v. Aberthaw Const. Co.*,
　333 A.2d 758 (Pa. 1975) .............................................................................................................. 6

*DCV Holdings, Inc. v. ConAgra, Inc.*,
　889 A.2d 954 (Del. 2005) ............................................................................................................ 9

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
　702 A.2d 1228 (Del. 1997) .......................................................................................................... 6

*Great Lakes Chemical Corp. v. Pharmacia Corp.*,
　788 A.2d 544 (Del. Ch. 2001) ................................................................................................... 10

*Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust*,
　28 A.3d 436 (Del. 2011) .............................................................................................................. 6

*L.P.P.R., Inc. v. Keller Crescent Corp.*,
　532 Fed. Appx. 268 (3d Cir. 2013) ............................................................................................. 6

*MBIA Ins. Corp. v. Royal Indem. Co.*,
　426 F.3d 204 (3d Cir. 2005) ........................................................................................................ 1

*Osborn ex rel. Osborn v. Kemp*,
　991 A.2d 1153 (Del. 2010) .......................................................................................................... 5

*Overdrive, Inc. v. Baker & Taylor, Inc.*,
　C.A. No. 5835-CC, 2011 WL 2448209 (Del. Ch. June 17, 2011) ........................................... 10

*RAA Mgmt. LLC v. Savage Sports Holdings, Inc.*,
　45 A.3d 107 (Del. 2012) ..................................................................................................... passim

*Se. PA Transp. Auth. v. AWS Remediation, Inc.*,
　No. Civ.A. 03-695, 2003 WL 21994811 (E.D. Pa. Aug. 18, 2003) ........................................... 6

*St. James Recreation, LLC v. Rieger Opportunity Partners LLC*,
　No. Civ.A. 19346, 2003 WL 22659875 (Del. Ch. Nov. 5, 2003) ............................................... 9

*ThoughtWorks, Inc. v. SV Inv. Partners, LLC*,
  902 A.2d 745 (Del. Ch. 2006) ............................................................................................3

*Transdigm Inc. v. Alcoa Global Fasteners, Inc.*,
  C.A. No. 7135-VCP, 2013 WL 2326881 (Del. Ch. May 29, 2013) .......................................10

*Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*,
  No. 13-1741-RGA, 2014 WL 3703867 (D. Del. July 24, 2014) ............................................10

*Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*,
  149 F.3d 134 (2d Cir. 1998) ................................................................................................2

## Statutes and Rules

Fed. R. Civ. P. 56(c) ...................................................................................................................2

**Preliminary Statement**

In attempting to avoid the actual terms of their contract, plaintiffs misquote its language, interject terms that do not appear, and ignore those that do. Plaintiffs' convoluted arguments fail to create any ambiguity in their crystal-clear promises never to sue Mr. Milken in connection with the transaction and disclaimer of extra-contractual representations. Allowing plaintiffs to shirk such promises would "'sanction [plaintiffs'] own fraudulent conduct'" by condoning lies made in the contract itself. *RAA Mgmt. LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 117 (Del. 2012) (quoting *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1057-58 (Del. Ch. 2006)); *see MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 218 (3d Cir. 2005) (failing to enforce contractual disclaimer allows plaintiff to commit "a fraud all its own"). Delaware law does not permit this, and instead requires enforcement of such terms precisely so that litigants will not be forced to defend lawsuits that contravene unambiguous contractual promises, such as this case. Summary judgment for Mr. Milken should be granted.

First, as to the Limited Guarantee's covenant not to sue:

- Plaintiffs argue their claims can proceed because they do not arise from the Guarantor's "Obligations"; but plaintiffs expressly agreed not only not to bring claims against Non-Recourse Parties related to "Obligations," but *also* not to bring any claims arising from the *transaction* at issue. The opposition simply ignores this language.

- Plaintiffs argue that Mr. Milken is not a "Non-Recourse Party"—despite Judge Rodriguez's ruling that he *is* such a party—but can make this argument only by adding words to the definition of "Non-Recourse Party" that are not in the contract.

- Plaintiffs misquote the contract in making the argument that their covenant not to sue terminated "*ab initio*" and became "null and void" when plaintiffs violated it. Actually the agreement says that that *the Guarantor's obligations* would terminate "*ab initio* and be null and void" upon a breach by plaintiffs, not that the entire Guarantee (including the covenant not to sue) would do so. Plaintiffs' position that they could nullify their own covenant by breaching it is nonsensical on its face.

- Plaintiffs argue that liability-limiting clauses are unenforceable as to claims of fraud, but do not acknowledge the recent, controlling authority of *RAA Management*, which holds the opposite.

Plaintiffs' arguments to avoid the contractual remedy limitations and disclaimers of extra-contractual representations are also based on distortions of the contract language. Plaintiffs

1

ignore the actual text of the exclusive remedy clause, which provides that only claims of fraud *against the Seller* (who has not been sued) may proceed. And their argument that they are not bound by the disclaimer of extra-contractual representations again misstates the contract language, which provides that *Scantron*—not just the Seller—disclaimed such representations.

As the Delaware Supreme Court recently held, liability disclaimers like those here should be enforced "at the pleading and summary judgment stage'" because the entire purpose of such terms is "'**not only to avoid liability . . . but also to avoid lawsuits, or at least lawsuits that cannot be quickly dismissed**.'" *RAA Mgmt.*, 45 A.3d at 118 (quoting *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 137 (2d Cir. 1998) (emphasis in original)). Plaintiffs are sophisticated parties represented by sophisticated counsel who negotiated for dozens of contractual representations but *none* by or relating to Mr. Milken, nor did Mr. Milken provide any guarantee. Plaintiffs neither claim there are material disputes of fact nor seek discovery to oppose this motion. This motion presents pure issues of law—the interpretation and enforcement of an unambiguous contract—and these issues should be decided now, by this Court, to provide Mr. Milken with the protections to which he is entitled under the terms of the contract and Delaware law. Plaintiffs' claims should be dismissed.[1]

## Argument

**I. The Covenant Not To Sue In Paragraph 6(b) Of The KUE LP Limited Guarantee Bars Plaintiffs' Claims Against Mr. Milken**

Contrary to plaintiffs' efforts to rewrite it, Paragraph 6(b) sets forth a clear agreement not to bring the claims asserted here:

> The Guaranteed Party [Scantron] hereby covenants and agrees that it shall not institute, and shall cause each of its Affiliates and representatives not to institute, directly or indirectly, any Action arising under, or in connection with, this

---

[1] Plaintiffs' description of the supposed merits of their claims is false and Mr. Milken denies these allegations. This description is also entirely immaterial because this motion presents only contractual defenses. In any event, plaintiffs' allegations are not supported by admissible evidence as plaintiffs have not authenticated their Exhibits. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge"); *Appleby v. Glaxo Wellcome, Inc.*, 2005 WL 3440440, at *2-3 (D.N.J. Dec. 13, 2005) (attorney affidavit insufficient to authenticate exhibits on summary judgment).

> Guarantee, the Purchase Agreement or the transactions contemplated thereby against the Guarantor or any Non-Recourse Party [including Mr. Milken] except for [certain claims against the Guarantor or Seller listed in clauses (i) through (iii)]. Recourse against the Guarantor and/or the Seller in accordance with Actions permitted by clauses (i) through (iii) immediately above shall be the sole and exclusive remedy of the Guaranteed Party and all of its Affiliates against the Guarantor or any Non-Recourse Party in respect of any liabilities or obligations arising under, or in connection with, the Purchase Agreement or any of the other agreements contemplated thereby, or the transactions contemplated thereby….

KUE LP Limited Guarantee (Kyman Decl. Ex. A) ¶ 6(b). Plaintiffs admit their claims "are 'in connection with' the 'transaction[] contemplated' by the Purchase Agreement." Opp. at 23. Plaintiffs admit this provision binds both plaintiffs. *Id.* at 16, 23. And they do not contend that Mr. Milken was a Guarantor or Seller, or that their claims fall within exceptions (i)-(iii). On its face, this paragraph flatly bars plaintiffs' claims.

Plaintiffs instead raise four arguments in response, none of which withstands scrutiny.

### A. Whether Plaintiffs' Claims Relate To The Guarantor's "Obligations" Is Irrelevant Because Paragraph 6(b) Bars Claims Relating To The *Transaction*

Plaintiffs first argue (Opp. at § II.A) that their covenant not to sue does not apply because their claims are "unrelated to the Guarantees" and the Guarantor's "Obligations" thereunder. That is irrelevant. The covenant expressly bars "any Action arising under, or in connection with, this Guarantee, the Purchase Agreement *or the transactions contemplated thereby* against . . . any Non-Recourse Party," not just actions which relate to the Guarantee or the Guarantor's "Obligations." KUE LP Limited Guarantee (Kyman Decl. Ex. A) ¶ 6(b) (emphasis added). Plaintiffs' claims indisputably arise under or in connection with the GlobalScholar sale transaction, and thus are covered by the covenant. The contract cannot simply be re-written to eliminate the "transactions" clause or add additional limitations. *BASF Corp. v. POSM II Props. P'ship, L.P.*, C.A. No. 3608-VCS, 2009 WL 522721, at *6 (Del. Ch. Mar. 3, 2009) ("Delaware law does not invest judicial officers with the power to creatively rewrite unambiguous contracts."); *ThoughtWorks, Inc. v. SV Inv. Partners, LLC*, 902 A.2d 745, 752 (Del. Ch. 2006) ("if the terms of a contract are clear, the court must accord the language its ordinary meaning.").

3

### B. Plaintiffs' Argument That Mr. Milken Is Not A Non-Recourse Party Also Seeks To Rewrite The Agreement

Plaintiffs next contend (Opp. at § II.B) that their claims can proceed because Mr. Milken is not a Non-Recourse Party. This argument is also based on an attempt to rewrite the contract.

Paragraph 6(a) defines the term "Non-Recourse Parties":

> [N]otwithstanding that the Guarantor is a limited partnership, the Guaranteed Party has no remedy, recourse or right of recovery against, or contribution from, in each case, with respect this Guarantee (i) [various persons and entities affiliated with the Guarantor], or (ii) [various persons and entities affiliated with the persons listed in clause (i)] (***those Persons and entities described in the foregoing clauses (i) and (ii) being referred to herein collectively as "Non-Recourse Parties"***).

KUE LP Limited Guarantee (Kyman Decl. Ex. A) ¶ 6(a) (emphasis added). This clause defines "Non-Recourse Parties" as "those Persons and entities described in the foregoing clauses (i) and (ii)." Plaintiffs do not dispute that Mr. Milken is one such person.

Plaintiffs instead argue that Mr. Milken is not a Non-Recourse Party because a phrase that *precedes* "clauses (i) and (ii)"—"in each case, with respect to this Guarantee"—should be read into the definition of "Non-Recourse Parties." According to plaintiffs, "Non-Recourse Parties" does not include all persons "described in the foregoing clauses (i) and (ii)" but only such persons who have claims brought against them "with respect to this Guarantee." But that is not what the contract says. The phrase "in each case, with respect to this Guarantee" is not part of the definition of "Non-Recourse Parties," which is set forth in clauses (i) and (ii). No amount of artful interpretive gymnastics can change this.

Plaintiffs argue that absurdities would result if "with respect to this Guarantee" were not read to be "a limit on both the 'remedy, recourse or right of recovery' and the listed 'Persons and entities' (Non-Recourse Parties)." Opp. at 16 (emphasis in original). But the absurdity is in plaintiffs' effort to rewrite the plain contract language. Treating "Non-Recourse Parties" as only persons against whom a claim "with respect to this Guarantee" is brought would render much of the covenant not to sue meaningless. That is because the covenant bars not just claims under

4

"this Guarantee" but also claims which arise under the "Purchase Agreement" and "the transactions contemplated thereby." KUE LP Limited Guarantee (Kyman Decl. Ex. A) ¶ 6(b). The covenant not to sue also bars instituting "directly or indirectly" any action against Non-Recourse Parties. This, too, would be meaningless if, as plaintiffs argue, the covenant only limits "derivative" liability and "does not limit direct liability." Opp. at 14. The covenant not to sue would be rendered substantially a nullity under plaintiffs' interpretation. *E.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("We will not read a contract to render a provision or term meaningless or illusory." (quotations omitted)).[2]

In all events, plaintiffs acknowledge that Judge Rodriguez has already ruled that "Milken is a Non-Recourse Party." Transfer Order at 16; *see id.* at 5 ("Defendant Michael Milken is a Non-Recourse Party as defined in the Limited Guarantee between Scantron and KUE LP."). Mr. Milken never claimed (*see* Opp. at 2, asserting otherwise) that Judge Rodriguez ruled that plaintiffs' claims are barred by the contract—but he *did* decide that Mr. Milken is a protected Non-Recourse Party. Plaintiffs offer no basis for ignoring this ruling.[3]

### C. Plaintiffs Misquote The Contract In Arguing That The Limited Guarantees Have Terminated *Ab Initio*

Plaintiffs next make the remarkable argument (Opp. at § II.E) that Paragraph 6(b) does not apply because plaintiffs' own filing of claims prohibited by the Guarantee resulted in "termination of the Guarantee and the corresponding elimination, *ab initio*, of the contract provisions on which Defendants rely." Opp. at 21-22. This argument depends on plaintiffs' blatant misquotation of the contract, which provides that plaintiffs' pursuit of claims prohibited by the Guarantee eliminates **the Guarantor's obligations** *ab initio*—but does **not** so terminate

---

[2] A plain reading of the contract would not "indiscriminately shield all 'Persons and entities' affiliated with the Guarantor from any claims whatsoever—unrelated to the Guarantee *or even the Transaction*," Opp. at 16 (emphasis added), because the covenant is limited to claims related to "this Guarantee, the Purchase Agreement or the transactions contemplated thereby." Nor would Scantron be prevented from asserting its right to seek forfeiture of bonuses from employees who quit, *id.* at 16-17, for such claims would not arise out the GlobalScholar sale.

[3] This ruling was an important basis for Judge Rodriguez's conclusion that Mr. Milken was entitled to enforce the contractual forum selection clause, which was a hotly-disputed issue. *Id.* at 26. It was thus one of the key findings that led to the transfer to this Court.

5

the Guarantee.  *Compare* Opp. at 8 (arguing that "[e]ach Guarantee provides that *it* 'shall terminate *ab initio* and be null and void'") (underscoring in original, emphasis added) *and* Opp. at 4 ("the Guarantees—including their covenant not to sue—evaporate '*ab initio*'") *with* KUE LP Guarantee (Kyman Decl. Ex. A) ¶ 10(b) ("[T]he **Obligations of the Guarantor** shall terminate *ab initio* and be null and void") (emphasis added).  Plaintiffs make the similarly far-fetched argument that the covenant not to sue "was *retroactively* terminated by the filing of the FAC" based on an email by the Seller's attorney.  Opp. at 22 (emphasis added).  In fact, the email's summary description of a protection afforded to the *Guarantor* merely stated that breaches by plaintiffs would "terminate[] the guarantee," not terminate it *ab initio* or render the covenant not to sue "null and void."  Moreover, Delaware law prohibits consideration of extrinsic evidence in construing an unambiguous contract precisely to avoid allowing snippets like this to force a party to litigate otherwise clear terms and thereby lose the benefit of its bargain.[4]

Plaintiffs' argument that they have the unilateral power to abrogate contractual protections afforded to Non-Recourse Parties such as Mr. Milken by *violating* those very protections defies logic and common sense.  *See, e.g., Chester City Sch. Auth. v. Aberthaw Const. Co.*, 333 A.2d 758, 764 (Pa. 1975) ("an interpretation which would permit one party to extinguish the right of the other . . . by a unilateral termination of the contract, would result in rendering the provision meaningless and the protection provided thereunder illusory."); *Se. PA Transp. Auth. v. AWS Remediation, Inc.*, No. Civ.A. 03-695, 2003 WL 21994811, *3 (E.D. Pa. Aug. 18, 2003) (similar).[5]  The Guarantor specifically negotiated for contractual protections that immunize Non-Recourse Parties, including Mr. Milken, from suit.  It would be irrational for plaintiffs to have the unilateral contractual authority to make those protections "disappear" by

---

[4]  Extrinsic evidence cannot be used "to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity" in what is, as plaintiffs acknowledge, an unambiguous contract.  *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *see L.P.P.R., Inc. v. Keller Crescent Corp.*, 532 Fed. Appx. 268, 273-74 (3d Cir. 2013) (court may not consider extrinsic evidence in determining whether contract is clear or ambiguous).

[5]  Plaintiffs' only authority is inapposite; it involved an insurance contract that was, unlike here, entirely void *ab initio* on public policy grounds.  *See Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust*, 28 A.3d 436, 439, 441-42 (Del. 2011).

*violating* them. The Guarantee states that only the Guarantor's obligations—and *not* the entire Guarantee—would terminate *ab initio* and become "null and void" upon breach by plaintiffs.[6]

### D. Plaintiffs' Argument That The Covenant Not To Sue Is Unenforceable Is Contrary To Controlling Delaware Supreme Court Authority

Last, Plaintiffs argue (Opp. at § II.F) that the covenant not to sue is unenforceable in light of "Delaware's strong public policy against enforcement of contractual provisions that serve to exculpate fraud." Opp. at 24. But plaintiffs ignore the Delaware Supreme Court's most recent decision in *RAA Management,* which held the opposite. There, the Court affirmed dismissal of intentional fraud claims—at the pleading stage—on the basis of a non-reliance disclaimer and a covenant not to sue that "waived any claims [the plaintiff] might have in connection with any potential transaction" pending a final sale agreement. 45 A.3d at 110-11. Rejecting the view that parties cannot use "contracts to shield themselves from liability for their own fraud," the Court ruled that under "Delaware law, ***the reasonable commercial expectations of the parties***, as set forth in the non-reliance disclaimer clauses in Paragraph 7 and the waiver provisions in Paragraph 8 . . . ***must be enforced***." *Id.* at 116, 119 (emph. added). This decision is controlling.

Rather than acknowledge this precedent, plaintiffs cite *Abry Partners* and several older Court of Chancery cases. Opp. at 24-25. To the extent these older cases are inconsistent, they have been superseded. Moreover, *Abry Partners* distinguished claims of fraud relating to *contractual* representations from *extra-contractual* ones, with only claims that "a seller intentionally misrepresents a fact ***embodied in a contract***" permitted to proceed, 891 A.2d at 1036 (emphasis added). Plaintiffs allege only purported extra-contractual misrepresentations here, so this decision does not support their claims.

---

[6] The structure of the termination clause further shows the error of plaintiffs' argument. In addition to stating that the Guarantor's Obligations (not the covenant not to sue) would terminate *ab initio* and become null and void upon a breach by plaintiffs (in clause (A)), the agreement adds that the Guarantor would be entitled to recoup any payments previously made to Scantron (clause (B)) and would have no further liability with respect to the Obligations or under the Guarantee (clause (C)). Each of these clauses is plainly designed to protect the Guarantor in the event of a breach by plaintiffs—none of them remotely suggests any intent to undo the categorical immunity of Non-Recourse Parties set forth earlier in the agreement.

7

## II. The Purchase Agreement's Exclusive Remedy Clause Also Bars Plaintiffs' Claims

Plaintiffs' claims are independently barred by the exclusive remedy provision in Section 8.07 of the Purchase Agreement. Plaintiffs argue (Opp. at § I) this section is "inapplicable to non-signatories" and that "Milken does not assert any status as a third party beneficiary" of this agreement. Opp. at 10. But Mr. Milken *does* assert the rights of a third-party beneficiary. Mot. at 13. Here again, Judge Rodriguez's decision, which is binding, resolved this issue in Mr. Milken's favor. *See* Transfer Order at 21 n.13, 26 ("The Court agrees that Milken is … a third-party beneficiary of the Purchase Agreement"); *see also* D.I. No. 18-1 at 11; D.I. No. 34 at 7-9.[7]

Section 8.07 enumerates a series of claims that are "the sole and exclusive remedy of any Person with respect to any and all matters arising out of, relating to or connected with this Agreement and the other transactions contemplated hereby." Purchase Agreement (Kyman Decl. Ex. B) § 8.07. Because Plaintiffs have not asserted any of the enumerated claims, this provision precludes the claims they have filed. The agreement does not provide that *all* claims arising from "intentional fraud" are permitted—it states that only "claims that arise from intentional fraud or a Willful and Material Breach **by Seller or Buyer**" may be filed, *id.* (emphasis added), and plaintiffs allege no such claims of fraud by the Seller. Plaintiffs also suggest that Section 8.09 allows their claims, Opp. at 3, but do not dispute that this provision addresses only claims based on representations ***within*** the Purchase Agreement, which plaintiffs have not asserted.

Rather than address the actual language of the relevant clauses, plaintiffs inappropriately cite an internal (and attorney-client privileged [8]) bullet-point summary of the Purchase Agreement which states that claims alleging "fraud" or a "willful and material" breach are not limited. Obviously, this 2.5-page bullet-point summary does not purport to quote every term of the 78-page Purchase Agreement—and it omits the contractual clause specifying that only claims alleging fraud or a willful and material breach "by Seller or Buyer" are permitted. Moreover, the

---

[7] The Limited Guarantee discussed above expressly provides that Non-Recourse Parties are third-party beneficiaries as to the covenant not to sue, KUE LP Limited Guarantee (Kyman Decl. Ex. A) ¶ 11, and plaintiffs have not disputed this issue.

[8] Mr. Milken objects to plaintiffs' improper disclosure and use of the Seller's privileged documents and reserves all his rights in that regard.

cited statement appears in a section addressing *monetary* limitations on *indemnity* claims and thus references at most the limitations applicable to *those* claims, which are not at issue. This extrinsic "evidence," which plaintiffs do not even claim to have relied upon, cannot supersede the explicit language of the agreement. *See supra* n.4.[9]

### III. The Disclaimer Of Extra-Contractual Representations Also Bars Plaintiffs' Claims

Finally, plaintiffs are wrong (Opp. at § III) that they can pursue claims based on extra-contractual representations despite the Purchase Agreement's disclaimer of such representations.

First, it is not correct that the Purchase Agreement "lack[s] the critical no-reliance language required to preclude claims of fraudulent inducement." Opp. at 25. In addition to specifying dozens of contractual representations that were made by the Seller, Purchase Agreement (Kyman Decl. Ex. B) at §§ 3.01-3.20 & Schedules, the agreement includes an integration clause and a disclaimer by the Seller of any other representations—including by the Seller's directors (such as Mr. Milken), *id.* at §§ 3.21, 11.08—*as well as* a clause in which "ALL OTHER REPRESENTATIONS AND WARRANTIES OF ANY KIND OR NATURE EXPRESS OR IMPLIED" are "SPECIFICALLY DISCLAIMED **BY THE PARTIES**," both Seller and Buyer. *Id.* § 6.06(a) (capitalization in original, emphasis added). Plaintiffs' claim that Section 6.06 merely "consist[s] of <u>Seller</u> disclaiming extra-contractual representations" again misstates the express terms of the contract. Opp. at 5 (underscoring in original).

Nor does it matter that the specific word "reliance" is not used; it is the overall meaning and effect of the contract that controls. In *RAA Management*, for example, the Court enforced a "non-reliance disclaimer" in which the buyer acknowledged that representations had not been made—*without* stating that it was not "relying" on such representations. 45 A.3d at 110. And in *St. James Recreation, LLC v. Rieger Opportunity Partners LLC*, No. Civ.A. 19346, 2003 WL

---

[9] There is no conflict between the Purchase Agreement and the Limited Guarantee. But the covenant not to sue in the Limited Guarantee would control if there were, for it specifically details the rights and immunities of Non-Recourse Parties. *See, e.g.*, *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.").

22659875, *3-4 (Del. Ch. Nov. 5, 2003) and *Great Lakes Chemical Corp. v. Pharmacia Corp.*, 788 A.2d 544, 551-52 (Del. Ch. 2001), the courts similarly enforced "non-reliance" disclaimers even though the contracts in those cases did not use the words "rely" or "reliance" anywhere.

Plaintiffs argue that "[e]ven an explicit anti-reliance clause is unenforceable" as to claims of fraud. Opp. at 28. *RAA Management* provides otherwise: "Delaware's public policy … favor[s] … ***enforcing*** contractually binding written disclaimers of reliance on representations outside of a final agreement of sale or merger." 45 A.3d at 117, 118-19 (emphasis added). Plaintiffs' citation to cases that fail to decide the issue or predate this authority is unavailing.[10]

### Conclusion

For the foregoing reasons, judgment should be entered for Mr. Milken.[11]

| | |
|---|---|
| DATED: September 12, 2014 | */s/ John M. Seaman*<br>ABRAMS & BAYLISS LLP |
| QUINN EMANUEL URQUHART<br>& SULLIVAN, LLP<br>John B. Quinn (*pro hac vice*)<br>Susan R. Estrich (*pro hac vice*)<br>Michael T. Zeller (*pro hac vice*)<br>B. Dylan Proctor (*pro hac vice*)<br>865 South Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100 | Kevin G. Abrams (SBN 2375)<br>John M. Seaman (SBN 3868)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>abrams@abramsbayliss.com<br>seaman@abramsbayliss.com<br>Telephone: (302) 778-1000<br>Facsimile: (302) 778-1001<br><br>*Attorneys for Defendant Michael Milken* |

---

[10] In *Anvil Holding Corp. v. Iron Acquisition Co.*, C.A. Nos. 7975-VCP, N12C-053-DFP, 2013 WL 2249655, at *7 & n.29 (Del. Ch. May 17, 2013), the court refused to consider, on waiver grounds, whether a provision that bore similarities to Section 6.06 here sufficed to defeat plaintiff's claims under *RAA Management*. *Overdrive, Inc. v. Baker & Taylor, Inc.*, C.A. No. 5835-CC, 2011 WL 2448209, at *6 (Del. Ch. June 17, 2011) preceded *RAA Management* and is no longer good law to the extent it is inconsistent. In a footnote, plaintiffs suggest that their non-reliance disclaimer does not bar their claims to the extent based on omissions. Opp. at 26 n.16 (citing *Transdigm Inc. v. Alcoa Global Fasteners, Inc.*, C.A. No. 7135-VCP, 2013 WL 2326881 (Del. Ch. May 29, 2013)). *Transdigm*, however, concerned "deliberate concealment of material facts," *id.* at *6, whereas plaintiffs' allegations of omissions mirror those regarding purported affirmative misrepresentations. *See, e.g.*, FAC ¶ 32 ("Defendants failed to inform Plaintiffs that they . . . had failed to fully integrate and implement the GlobalScholar platform *as they had represented*." (emphasis added)). While "[e]very misrepresentation, to some extent, involves an omission of the truth … simply characterizing something as an 'omission' does not render the anti-reliance provision a nullity." *Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, No. 13-1741-RGA, 2014 WL 3703867, at *5 (D. Del. July 24, 2014).

[11] Plaintiffs concede that their Texas statutory claims fail. *See* Opp. at 9 n.4.