IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARLAND CLARKE HOLDINGS CORP. and SCANTRON CORPORATION, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| MICHAEL MILKEN and KALYANARAMAN SRINIVASAN, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 14-138-GMS

## ORDER

At Wilmington, this ___4th___ day of March 2015, presently before the court are the defendants' motions for summary judgment. (D.I. 99, 101.)

On June 17, 2013, the plaintiffs Harland Clarke Holdings Corp. ("Harland Clarke") and Scantron Corporation ("Scantron") (collectively, "the Plaintiffs") filed suit against the defendants Michael Milken ("Milken") and Kalyanaraman Srinivasan ("Raman") in Texas state court. (D.I. 61 at 6 ("Transfer Order").) The action was removed to federal district court for the Western District of Texas on the basis of diversity jurisdiction, and Judge Xavier Rodriguez subsequently transferred the case to the District of Delaware on February 4, 2014. (Transfer Order at 32.)

The Plaintiffs' cause of action stems from Scantron's purchase of a company known as GlobalScholar from non-party KUE Digital International, L.L.C. ("Seller"). (Transfer Order at 1–2.) Harland Clarke is Scantron's parent company. Raman and Milken were, in some capacity, involved in the management of GlobalScholar and Seller. (*Id.* at 2, 6.) In order to effect the sale of GlobalScholar, Scantron and Seller entered into a Securities Purchase Agreement ("Purchase

Agreement"), in addition to several "Limited Guarantees," including those executed by Raman

and Knowledge Universe Education, L.P. ("KUE LP"), one of Seller's primary equity holders.

(*Id.* at 3–4; D.I. 100, Exs. A, B; D.I. 102, Ex. A.) Milken personally did not execute a Limited

Guarantee but is affiliated with KUE LP.[1]

The crux of the Plaintiffs' allegations is that Raman and Milken made false statements

that improperly induced Scantron (whether by fraud or negligence) to purchase GlobalScholar.

Raman and Milken both seek summary judgment on the grounds that, pursuant to the Purchase

Agreement and the Limited Guarantees, the Plaintiffs' claims fail as a matter of law. Although

Raman and Milken are not identically situated—Raman executed a Limited Guarantee himself,

whereas Milken did not—they nonetheless assert similar arguments. Where possible, the court

addresses their contentions together.

"Under Delaware law, the interpretation of contractual language . . . is a question of law."

*O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001). Moreover, "Delaware courts

are obligated to confine themselves to the language of the document and not to look to extrinsic

evidence to find ambiguity." *Id.* at 289. The parties agree that the pertinent language in the

Purchase Agreement and Limited Guarantees is unambiguous. Thus, here, the summary

judgment stage is the proper time to resolve disagreements regarding contract interpretation. For

the following reasons, summary judgment as to both Raman and Milken is appropriate.

The Limited Guarantee for Raman contains the following "No-Recourse" provision:

> The Guaranteed Party [Scantron] hereby covenants and agrees that
> it shall not institute, and shall cause each of its Affiliates [*e.g.*,
> Harland Clarke] and representatives not to institute, directly or
> indirectly, any Action arising under, or in connection with, this
> Guarantee, the Purchase Agreement or the transactions
> contemplated thereby against the Guarantor [Raman] or any Non-

---

[1] Judge Rodriguez's Transfer Order contains a more comprehensive discussion of the underlying facts. (*See id.* at 1–7.)

Recourse Party except for (i) claims by the Guaranteed Party against the Guarantor under and in accordance with this Guarantee or (ii) claims by the Guaranteed Party against Seller under and in accordance with the Purchase Agreement. *Recourse against the Guarantor and/or the Seller in accordance with Actions permitted by clauses (i) and (ii) immediately above shall be the sole and exclusive remedy of the Guaranteed Party and all of its Affiliates against the Guarantor or any Non-Recourse Party in respect of any liabilities or obligations arising under, or in connection with, the Purchase Agreement or any of the other agreements contemplated thereby*, or the transactions contemplated thereby, and such recourse shall be subject to the limitations described herein and therein.

(D.I. 100, Ex. B, ¶ 6(b) ("Raman Guarantee") (emphasis added).)   The Limited Guarantee executed by KUE LP is nearly identical, except that it contains an additional provision allowing "claims under and in accordance with the Restrictive Covenant Agreement." (D.I. 102, Ex. A, ¶ 6(b) ("KUE LP Guarantee").)  Because he executed the Guarantee, Raman is a Guarantor under Paragraph 6(b).  Milken, however, is simply an affiliate of KUE LP, and therefore qualifies as a "Non-Recourse Party."[2]  Thus, Paragraph 6(b) of the Raman and KUE LP Guarantees defines the universe of actions—"the sole and exclusive remed[ies]"—that can be asserted by the Plaintiffs against Raman and Milken.

Taking them individually, the court finds that the Plaintiffs' claims against Raman are impermissible.  To the extent that the Plaintiffs' argue their claims do not arise under the Raman Guarantee (because they concern extra-contractual fraud), they are barred by Paragraph 6(b). Paragraph 6(b) provides a carve-out for "claims by the Guaranteed Party [the Plaintiffs] against the Guarantor [Raman] *under and in accordance with* this Guarantee," but contains no similar provision protecting claims unrelated to the Guarantee.  (Raman Guarantee, ¶ 6(b) (emphasis

---

[2] Paragraph 6(a) of the KUE LP Guarantee defines Non-Recourse Parties to include "any Affiliates of the Guarantor." (D.I. 102, Ex. A, ¶ 6(a).)  Milken plainly satisfies this definition by virtue of his affiliation with KUE LP.  Judge Rodriguez's Transfer Order confirmed this.  (Transfer Order at 5 ("Defendant Michael Milken is a Non-Recourse Party as defined in the Limited Guarantee between Scantron and KUE LP.").)  The court rejects the Plaintiffs' argument that Milken is not a Non-Recourse Party.

3

added).)  The Plaintiffs' staunch assertion that their claims are unrelated to the Raman Guarantee therefore immediately halts their case.  Assuming, however, that the claims *are* related the Raman Guarantee allows them to proceed slightly further.[3]  But the claims still fail because they were not brought "in accordance with" the Raman Guarantee.  In particular, the Raman Guarantee imposes on Raman a liability cap of 5.2% of the purchase price of the sale agreement. (Raman Guarantee, ¶ 1(c).)  By bringing this lawsuit seeking to recover the full value of the sale (D.I. 26, ¶ 82), the Plaintiffs breached the Raman Guarantee; its claims are not "in accordance with" the Raman Guarantee and therefore are barred by Paragraph 6(b).[4]

The court's analysis of the claims against Milken is simpler.  As a Non-Recourse Party, Milken is largely immune from suit.  (KUE Guarantee, ¶ 6(a), (b).)  Milken is not a Guarantor nor the Seller, and the claims against him are not brought "under and in accordance with the Restrictive Covenant Agreement."  (*Id.* ¶ 6(b).)  Thus, Paragraph 6(b) bars the Plaintiffs' claims. The court has already addressed and rejected the Plaintiffs' arguments to the contrary.

The Plaintiffs attempt to argue that the Paragraph 6(b) restrictions—if read to bar fraud claims—are unenforceable on public policy grounds.  Relying on dated Delaware Chancery Court cases, the Plaintiffs make the blanket statement that "Delaware courts do not enforce no-recourse clauses to bar fraud and other non-contract claims."  (D.I. 117 at 24 (citing *Geyer v.*

---

[3] Indeed, Judge Rodriguez specifically found:
> [T]he plain language of the Transaction Documents evidences the parties' intent that whatever claims were brought by Scantron or its Affiliates (including Harland Clarke) against Raman or Milken, those claims would be brought only "under and in accordance with [the] Guarantee," "under and in accordance with the Purchase Agreement," or "under and in accordance with the Restrictive Covenant Agreement," and subject to the limitations described therein.

(Transfer Order at 16.)

[4] The Plaintiffs make the puzzling argument that their filing of an impermissible suit would void the Raman Guarantee (and the KUE Guarantee) *ab initio*, thus eliminating the No-Recourse provisions of Paragraph 6(b).  In other words, the Plaintiffs could free themselves of the bargained-for restrictions merely by violating the very restrictions at issue.  This argument appears premised on a profound misreading of the Guarantees' Termination provisions.  (*E.g.*, Raman Guarantee, ¶ 10(b).)  The court declines to devote additional discussion to this point—the Plaintiffs are incorrect.

*Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992); *Mabon, Nugent & Co. v. Tex. Am. Energy Corp.*, C.A. No. 8578, 1988 WL 5492, at *3; *Cont'l Ill. Nat'l Bank & Trust Co. v. Hunt Int'l Res. Corp.*, C.A. No. 7888, 1987 WL 55826, at *6 (Del. Ch. Feb. 27, 1987)). But the Plaintiffs wholly ignore Raman's and Milken's citations to more recent cases and fail to distinguish between fraud within the contract and fraud outside of the contract (extra-contractual fraud), as alleged here. *See RAA Management, LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 116–18 (Del. 2012). There is no "general rule prohibit[ing] parties from using contracts to shield themselves from liability for their own fraud." *See id.* at 116. Contracts between sophisticated parties may include provisions insulating the parties from "fraud claims based on representations made *outside* of a merger agreement—which *can* be disclaimed through non-reliance language." *Id.* at 117 (citing *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1059 (Del. Ch. 2006)).

Relatedly, the court finds that—apart from whether the claims are affirmatively barred by Paragraph 6(b)—the Plaintiffs would be unable to prove reasonable reliance to establish their misrepresentation claims, thus making summary judgment appropriate. *See* Fed. R. Civ. P. 56(a) ("[T]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact . . . ."). In addition to a "complete agreement" clause (Purchase Agreement, § 11.08), the Purchase Agreement also contains numerous examples of "non-reliance" language:

> 3.21 No Other Representations. Except for the representations and warranties contained in this Agreement or the other Transaction Documents, *Seller makes no express or implied representation or warranty in respect or on behalf of Seller or any of its Affiliates*, and *Seller disclaims any such representation or warranty, whether by Seller or any of its officers, directors, employees, agents or representatives or any other Person*, . . . with respect to . . . the

> businesses, assets, liabilities, obligations or prospects of any of the
> Purchased Subsidiaries or their Subsidiaries . . . .

(*Id.* § 3.2 (emphasis added).)

> 6.06 Acknowledgment by the Parties.
> (a) EACH OF THE PARTIES HERETO ACKNOWLEDGES
> THAT THE REPRESENTATIONS AND WARRANTIES BY
> THE OTHER PARTIES SET FORTH IN THIS AGREEMENT
> AND ANY CERTIFICATE DELIVERED HEREUNDER,
> CONSTITUTE THE *SOLE AND EXCLUSIVE*
> *REPRESENTATIONS AND WARRANTIES OF THE OTHER*
> *PARTIES IN CONNECTION WITH THE TRANSACTIONS*
> *CONTEMPLATED HEREBY, AND EACH OF THE PARTIES*
> *HERETO UNDERSTANDS, ACKNOWLEDGES AND AGREES*
> *THAT ALL OTHER REPRESENTATIONS AND WARRANTIES OF*
> *ANY KIND OR NATURE EXPRESS OR IMPLIED (INCLUDING,*
> *BUT NOT LIMITED TO, ANY RELATING TO THE FUTURE*
> *FINANCIAL CONDITION OR PROJECTIONS, RESULTS OF*
> *OPERATIONS, ASSETS OR LIABILITIES OF THE PURCHASED*
> *SUBSIDIARIES OR THEIR SUBSIDIARIES OR ANY OTHER*
> *PERSON) ARE SPECIFICALLY DISCLAIMED BY THE*
> *PARTIES.*

(*Id.* § 6.06 (emphasis added).) The court agrees with Raman and Milken that, in light of these clauses, the Plaintiffs could not as a matter of law prove reasonable or justifiable reliance. There is no dispute that Scantron is a sophisticated party and was represented by counsel throughout the process of acquiring GlobalScholar. The court's primary objective is to protect the "reasonable commercial expectations" of the parties, to ensure the benefit of the bargain is achieved. *See RAA Management*, 45 A.3d at 119 ("The reasonable commercial expectations of the parties, as set forth in the non-reliance disclaimer clauses . . . and the waiver provisions . . . must be enforced."); *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 556 (Del. Ch. 2001) ("To allow Great Lakes to assert, under the rubric of fraud, claims that are explicitly precluded by contract, would defeat the reasonable commercial expectations of the contracting parties and eviscerate the utility of written contractual agreements."). The Plaintiffs

6

are correct that it is improper to infer a broad waiver of fraud claims simply because of "murky integration clauses, or standard integration clauses without explicit anti-reliance representations." *See Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1059 (Del. Ch. 2006). But as identified above, there were other explicit disclaimers, in addition to the "complete agreement" clause. Delaware law does not require that the specific word "reliance" be included as a prerequisite to finding a waiver. *See RAA Management*, 45 A.3d at 110. Provisions like those present in the Purchase Agreement suffice. The Plaintiffs cannot prove their misrepresentation claims.

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Raman's Motion for Summary Judgment (D.I. 99) is GRANTED;

2. Milken's Motion for Summary Judgment (D.I. 101) is GRANTED;

3. The Clerk of the Court is instructed to close this case.

Dated: March 4, 2015

UNITED STATES DISTRICT JUDGE